NUMBER 13-10-00420-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

GEORGE TREY HOUSTON III,                                          Appellant,

 

v.

 

THE STATE OF TEXAS,                                    Appellee.

                                                                     


 

On appeal from the 12th
District Court

of Walker County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

                     Before
Justices Benavides, Vela, and Perkes

                     Memorandum
Opinion by Justice Benavides[1]

 

By
two issues, Appellant, George Trey Houston III, argues that:  (1) the evidence
was legally insufficient to convict him of possession of a controlled substance,
specifically, cocaine; and (2) the State failed to establish beyond a
reasonable doubt that there were “affirmative links” connecting Houston to the
cocaine contraband found during a vehicle search.  See Tex. Health & Safety Code Ann. §
481.115(c) (West 2010).  We affirm.

I. Background[2]

            On
January 16, 2009, Huntsville police officers responded to a call that three men
who appeared intoxicated were standing near a Jeep vehicle at an Exxon gas
station.  Sergeant Blake Golle arrived at the scene first.  He stopped the Jeep
as it was about to leave the station and discovered that three people were in
the vehicle:  the driver, Brandon Williams; the front seat passenger, Houston;
and the rear seat passenger, Christian Jackson.  Sergeant Golle testified that
he smelled marihuana as soon as Williams rolled down the driver’s side window. 
Sergeant Golle had Williams exit the vehicle, advised Williams that he smelled
marihuana, and asked Williams if there was anything illegal in the vehicle. 
Williams responded in the negative and gave Sergeant Golle permission to search
the vehicle.  Williams did, however, state that he thought his girlfriend
“might have left her pill bottle” in the glove compartment.

            At
this point, Officers Todd Lewis and Cameron Mattison arrived at the scene as
back-up patrol officers.  Sergeant Golle asked the officers to escort each of
the remaining passengers out of the vehicle so that he could search it. 
Officer Lewis escorted Jackson from the backseat; Officer Mattison escorted
Houston from the front passenger seat.  Officer Mattison observed that Houston
had “red glassy eyes,” “appeared high or intoxicated,” “seemed out of it,” and
“seemed upset” about the officers’ presence.  Officer Mattison stated that he
did not see Jackson hand anything to Houston prior to their departure from the
vehicle.  

Sergeant
Golle commenced his search.  When he started to search the front passenger
seat, Houston made an effort to return to the vehicle.  Sergeant Golle soon
discovered a pill bottle on the right front passenger seat near the seatbelt
buckle.  Based on a plain observation of the bottle, Sergeant Golle believed it
contained crack cocaine and Xanax pills.  Sergeant Golle stated that, based on
his training and experience, it is uncommon for people to leave cocaine “laying
around” because each cocaine or crack rock can be worth up to $20; the
substance is “treated somewhat like a commodity,” and people can “be
possessive” of it.

Officer
Mattison testified that Houston was wearing an oversized hooded sweatshirt and
baggy pants at the time of this search, and opined that it would be easy “to
slide something out of the pocket of those pants or . . . sweatshirt into the
seat.”  Officer Mattison also testified that, at one point during the search,
Houston announced to Sergeant Golle that he did not have probable cause to
search the vehicle.  Houston testified that Williams was the one who questioned
Sergeant Golle’s probable cause, not him.  He also adamantly denied that the
pill bottle was his.  Houston stated that he got into Williams’s vehicle and
did not feel the pill bottle on his seat.  

Sergeant
Golle countered that, based on the small size of the seat and the location of
the bottle near the seat belt buckle, any person sitting in that seat would
have felt the pill bottle touching them.  Based on the foregoing evidence,
Sergeant Golle surmised that the pill bottle was Houston’s and arrested him. 
No fingerprints were taken of the pill bottle.  Dottie Collins, a forensic
scientist with the Texas Department of Public Safety Crime Laboratory, verified
that the pill bottle contained cocaine.

The
jury found Houston guilty of possession of a controlled substance, sentenced
him to two years in the Texas Department of Criminal Justice—Institutional
Division, and assessed a fine of $10,000.  See Tex. Health & Safety Code Ann. § 481.115(c).  Houston
appealed.

II.
Sufficiency of the Evidence

A.        Applicable
Law

            By
his first issue, Houston argues that the evidence is insufficient to convict
him of possession of a controlled substance, specifically, cocaine.  Our
sufficiency analysis is conducted under “a rigorous and proper application” of
the Jackson v. Virginia standard of review.  Brooks v. State, 323
S.W.3d 893, 906 (Tex. Crim. App. 2010).  Under this standard, “the relevant
question is whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Jackson v. Virginia,
443 U.S. 307, 319 (1979); see Brooks, 323 S.W.3d at 902 n.19.  “[T]he
fact-finder’s role as weigher of the evidence is preserved through a legal
conclusion that upon judicial review all of the evidence is to be
considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see also Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”); Tex. Code Crim. Proc. Ann.
art. 38.04 (West 1979) (“The jury, in all cases, is the exclusive judge of
facts proved and the weight to be given to the
testimony . . . .”).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.—Corpus
Christi 2002, pet. ref’d).  Under a hypothetically correct jury charge, the
State was required to prove beyond a reasonable doubt that Houston:  (1)
knowingly or intentionally (2) possessed (3) a controlled substance listed in
Penalty Group One[3]
(4) in an amount of one to four grams.  See Tex. Health & Safety Code Ann. §
481.115.  To establish unlawful possession of a controlled substance, the State
must prove (1) that the accused exercised care, custody, control or management
over the contraband; and (2) that the accused knew the matter possessed was contraband. 
See Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); Martin
v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  While possession
need not be exclusive, and facts and circumstances may be sufficient to show an
accused possessed a narcotic drug, there must be some affirmative link existing
between the person accused and the narcotic drug.  Hausman v. State, 480
S.W.2d 721, 723 (Tex. Crim. App. 1972).

B.        Analysis

            The record shows that the pill bottle
was found in the front passenger seat where Houston was sitting.  Testimony
revealed that the front passenger seat was small and that the pill bottle was
located near the seatbelt buckle, such that any person sitting there would have
noticed or felt it.  The pill bottle was clear and, based on plain observation,
it was obvious that it contained some type of substance.  Houston had “red
glassy eyes,” “appeared high or intoxicated,” “seemed out of it,” and was
“upset” about the officers’ presence.  He also turned back toward the car when
Sergeant Golle approached the front passenger seat where he had been sitting. 
This act could be interpreted to mean that Houston knew the pill bottle was
contraband and that it was in his possession at the time of the stop.  See
Poindexter, 153 S.W.3d at 405; Martin, 753 S.W.2d at 387.

In
addition, the owner and driver of the vehicle, Williams, admitted to Sergeant
Golle that there were no illegal substances in the vehicle and voluntarily gave
permission for a search—a jury could have surmised that Williams would not have
done so if he had something to hide.  The evidence also showed that Officer
Mattison did not notice Jackson, the backseat passenger, hand anything to
Houston as the men were exiting the vehicle.  Sergeant Golle testified that
because cocaine was so valuable on the street, it was unlikely that someone
would have just let it “lay around.”  Williams was wearing loose, baggy
clothing which would have made it easy to slide any contraband out of his
clothes before he left the vehicle.  

We
acknowledge that Houston presented some evidence demonstrating that the pill
bottle was not his.  For example, the vehicle in which the pill bottle was
found was not his.  Williams stated that he thought his girlfriend might have
left a pill bottle in the glove compartment of his vehicle.  Houston also
claimed that his companion, Jackson, was the one who questioned Sergeant
Golle’s probable cause to conduct the search, not him.  Further, no
fingerprints were taken of the bottle to confirm whether Houston had held it. 
However, it is within the province of the jury to reconcile conflicts or
questions in the evidence, and the jury believed that Houston possessed the
pill bottle of cocaine.  See Wesbrook, 29 S.W.3d at 111.

            Viewing
the evidence in the light most favorable to the prosecution, we find that the
evidence was sufficient to support Houston’s conviction of possession of a
controlled substance.  See Tex.
Health & Safety Code Ann. § 481.115(c).  We overrule Houston’s first
issue.

III. Affirmative
Links

A.        Applicable
Law

Because the cocaine was not found in
his actual possession, Houston argues that the State’s evidence did not offer
any “affirmative links” linking him to the pill bottle filled with cocaine. 
“The ‘affirmative links rule’ is designed to protect the innocent bystander
from conviction based solely upon his fortuitous proximity to someone else’s
drugs.”  Poindexter, 153 S.W.3d at 405.  Accordingly,

When the accused is not in exclusive
possession of the place where the substance is found, it cannot be concluded
that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the
accused to the contraband.

 

Id. at 406 (citing Deshong v. State,
625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).  

Texas
case law offers a
list of nonexclusive factors to consider when attempting to link an accused to
the contraband involved in the case.  See Lassaint v. State, 79
S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.).  The factors
include whether:

(1)         
The
contraband was in plain view or recovered from an enclosed place;

 

(2)         
The
accused was the owner of the premises or had the right to possess the place
where the contraband was found, or was the owner or driver of the automobile in
which the contraband was found;

 

(3)         
The
accused was found with a large amount of cash;

 

(4)         
The
contraband was conveniently accessible to the accused, or found on the same
side of the vehicle as the accused was sitting;

 

(5)         
The
contraband was found in close proximity to the accused;

 

(6)         
A
strong residual odor of the contraband was present;

 

(7)         
The
accused possessed other contraband when arrested;

 

(8)         
Paraphernalia
to use the contraband was in view, or found on the accused;

 

(9)         
The
physical condition of the accused indicated recent consumption of the
contraband in question;

 

(10)      
Conduct
by the accused indicated a consciousness of guilt;

 

(11)      
The
accused attempted to escape or flee;

 

(12)      
The
accused made furtive gestures;

 

(13)      
The
accused had a special connection to the contraband;

 

(14)      
The
occupants of the premises gave conflicting statements about relevant matters;

 

(15)      
The
accused made incriminating statements connecting himself to the contraband;            

 

(16)      
The
quantity of the contraband; and,

 

(17)      
The
accused was observed in a suspicious area under suspicious circumstances.                                    

Id.; see Evans v. State, 202
S.W.3d 158, 162 (Tex. Crim. App. 2006); Olivarez v. State, 171 S.W.3d
283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  The number of factors
is not as important as their logical force in establishing the elements of
the offense.  See Jenkins v. State, 76 S.W.3d 709, 713 (Tex. App.—Corpus
Christi 2002, pet. ref’d); see also Jones v. State, 963 S.W.2d 826, 830
(Tex. App.—Texarkana 1998, pet. ref'd).  “In deciding whether the evidence is
sufficient to link the defendant to the contraband, the trier of fact is the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.” Poindexter, 153 S.W.3d at 406.

B.        Analysis

Here,
the pill bottle containing cocaine was in plain view and recovered from the
seat where Houston had just been sitting.  The testimony established that the
pill bottle was located in a small seat in a location where the occupant of the
seat would have seen it or felt it.  The contraband was conveniently accessible
to Houston and in close proximity to him.  Houston’s “physical condition”
indicated that he was under the influence of an intoxicating substance; Officer
Mattison testified that Houston had glassy eyes and a confused demeanor. 
Although Houston acknowledged during the trial that he had been smoking
marihuana that day, the jury could have concluded that he may have been under
the influence of another drug, like cocaine, as well.  Further, the fact that
Houston attempted to return to the vehicle when Sergeant Golle began to search
the right front passenger seat Houston had just occupied could be considered
“conduct by the accused indicating a consciousness of guilt” or a “furtive
gesture.”  See Lassaint, 79 S.W.3d at 740–41

The
jury was the exclusive judge of the credibility of the witnesses and the weight
of their respective testimonies.  Id.  The jury determined that there
were sufficient “affirmative links” connecting Houston to the contraband at
issue, and we will not substitute our judgment for that of the factfinders’.  We
thus overrule Houston’s second issue.

IV. Conclusion

            Having
overruled both of Houston’s issues, we affirm the judgment of the trial court. 

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Do not publish.

Tex. R. App.
P. 47.2(b).

 

Delivered and filed the

31st day of August, 2011. 

 

 









[1] This case is before this Court on
transfer from the Tenth Court of Appeals in
Waco pursuant to an order issued by the Supreme Court of
Texas.  See Tex. Gov’t Code Ann.
§ 73.001 (West 2005).    

 





[2]  We note that the appellee, the
State of Texas, did not file a response brief in this matter.  See Siverand
v. State, 89 S.W.3d 216, 220 (Tex. App.—Corpus Christi 2002, no pet.)
(noting that when the State fails to file a brief, the appellate court must
make an independent examination of the merits of the appeal, but must limit its
examination to the arguments advanced at the trial court level); see generally Tex. R. App. P. 38.2.





[3] See
Tex. Health & Safety Code Ann.
§ 481.102(3)(D) (West 2010).  Penalty Group One includes numerous opiates and opium derivatives, such as cocaine
in its many forms:

 

(D)        Cocaine,
including:

(i)         its salts, its optical, position, and
geometric isomers, and the salts of those isomers;

(ii)         coca leaves and a salt, compound,
derivative, or preparation of coca leaves;

(iii)        a salt, compound, derivative, or preparation
of a salt, compound, or derivative that is chemically equivalent or identical
to a substance described by Subparagraph (i) or (ii), other than decocainized
coca leaves or extractions of coca leaves that do not contain cocaine or
ecgonine.